**PESTOLITE, INC., a Delaware corporation, Plaintiff,**

v.

**CORDURA CORPORATION, a Delaware corporation, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted: Oct. 5, 1982.
Decided: Nov. 29, 1982.

Walter L. Pepperman, II, and Francis J. Murphy of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff; Steven H. Berkowitz (argued), and W. Bourne Ruthrauff, Gratz, Tate, Spiegel, Ervin & Ruthrauff, Philadelphia, Pa., of counsel.

Charles F. Richards, Jr., William J. Wade (argued), and Jesse A. Finkelstein of Richards, Layton, & Finger, Wilmington, for defendant.

MARTIN, Judge.

In this action, 449 A.2d 263, for breach of contract, fraud, obtaining goods by fraudulent means, and tortious interference with contractual relations, the defendant Cordura Corporation ("Cordura") has moved to stay this action in favor of adversary proceedings filed in the U.S. Bankruptcy Court for the Northern District of Illinois (Bankruptcy No. 81–A–1739), wherein the indebtedness of Cordura's wholly-owned subsidiary, Douglas-Dunhill, Inc. ("Dunhill") to plaintiff Pestolite, Inc. ("Pestolite") will be adjudicated. This latter action impacts Cordura's liability with respect to certain contracts of suretyship at issue in the present litigation. However, for reasons set forth hereinafter, the Court denies the stay.

The underlying controversy centers around a series of contracts entered into between: (1) Pestolite and Dunhill; (2) Pestolite and Cordura; and (3) Pestolite and Cordura as surety for Dunhill. In 1978, Pestolite manufactured and sold its product[1] to Dunhill without incident. The following year the parties negotiated a similar arrangement, this time with Dunhill initiating an agreement to market the manufacturer's *entire* 1979 output. As Pestolite manufactured and delivered the requested units, Dunhill became in arrears on its

---

1. Plaintiff manufactures a mechanism known as the "Pestolite Patio Protector," sold to consumers for the purpose of controlling and eliminating flying insects present in outdoor patio and garden areas.

account in the sum of $688,714.21 plus air freight charges.[2]

Consequently, in September, 1979, Pestolite entered negotiations with both Dunhill and its parent company Cordura. The parties eventually reached an agreement whereby: (1) Dunhill was to purchase 20,000 units for 1980; (2) Cordura was to purchase 40,000 units for 1980; (3) Cordura agreed to post a $1,000,000 certificate of deposit to insure payment by Dunhill of its arrearages as well as the obligations of both parent and subsidiary pursuant to the 1980 sales contract. Again, Pestolite was subject to an exclusive dealership provision, thus committing its entire output to Cordura and Dunhill.

However, in January, 1980, Dunhill and Cordura cancelled their purchase orders. On January 14, 1980, Dunhill was forced into involuntary bankruptcy. Due to the seasonal nature of the Patio Protector, Pestolite was unable to secure another marketer for its products in 1980 and has allegedly suffered the loss of nearly its entire profits for that year in addition to potential loss of its competitive position in the industry.[3]

Pestolite filed an action in this Court on March 25, 1981 alleging breaches of contract, fraud, and tortious interference with business relations.[4] The contract claims arose from Cordura's purchase order on its own behalf and also its agreement to guaranty both Dunhill's outstanding obligations to Pestolite from 1979 as well as its liability under the 1980 sales contract. Cordura's affirmative representation of Dunhill's financial stability, plus its insistence that Pestolite contract with it and Dunhill to the exclusion of all other marketing agents, precipitated the present tort actions.

On May 20, 1981, Dunhill filed an adversary claim in the Illinois Bankruptcy Court, objecting to Pestolite's creditor claims and counterclaiming on the 1979 contract for breach of contract for failure to make timely delivery. It is on the basis of this latter action that Cordura seeks to halt the instant proceeding. The criteria for evaluating a motion to stay are enunciated in *McWane Cast Iron P. Corp. v. McDowell-Wellman E. Co.*, Del.Supr., 263 A.2d 281 (1970) and have been applied consistently by the Delaware Courts. The question falls squarely within the province of the trial court's discretion and is to be determined in light of all the facts and circumstances and in the interest of expeditious and economic administration of justice. *Life Assur. Co. of PA. v. Associated Invest. Int. Corp.*, Del. Ch., 312 A.2d 337 (1973). The factors governing the grant or denial of a stay echo those considered in judging a motion to dismiss under the *forum non conveniens* doctrine:

(1) Applicability of Delaware law;

(2) Relative ease of access to proof;

(3) Availability of compulsory process for witnesses;

(4) The pendency or non-pendency of a similar action or actions in another jurisdiction; and

(5) All other practical considerations which would make the trial easy, expeditious and inexpensive.

312 A.2d at 340; *Boston VLCC Tankers, Etc. v. Bethlehem Steel*, Del.Super., 415 A.2d 492 (1980).

In the wake of *McWane*, this Court espouses the notion that its discretion in ruling upon a motion to stay will be "sparingly exercised" in any case where there is no *prior* action pending in another

---

2. In an effort to accelerate shipments, Dunhill had secured air freight service collect without Pestolite's knowledge. Pestolite was subsequently forced to advance the air freight costs from its own funds to preclude sale of the goods at the port of entry. Despite assurances from Dunhill, Pestolite was never reimbursed for the expense.

3. Moreover, Pestolite claims it expended over $160,000, in preparing to manufacture its product by obtaining special tooling and equipment.

4. Dunhill was insulated from similar claims in this Court due to the involuntary Chapter 11 bankruptcy proceeding in the U.S. Bankruptcy Court for the Northern District of Illinois (Bankruptcy No. 80–B–00450).

jurisdiction, *Fast Foodmakers, Inc. v. Greisler*, Del.Super., 290 A.2d 1, 3 (1972), recognizing that "litigation should be confined to the forum in which it is first commenced," 263 A.2d at 283. Moreover, the moving party assumes the burden of showing "factors of hardship sufficient to tip the scale in its favor," *Moore Golf, Inc. v. Ewing*, Del. Supr., 269 A.2d 51, 52 (1970); *Texas City Refin., Inc. v. Grand Bahama Pet. Co., Ltd.*, Del.Supr., 347 A.2d 657, 658 (1975).

■ The instant motion is more complex than the precedents upon which it relies in its presentation of multiple issues, parties and jurisdictional contacts, as well as the intricacies of a parent-subsidiary corporate relationship and tort claims alleging fraud. Finally, the procedural aspects of bankruptcy litigation and the impact of such litigation on an entity which is not even a party to the instant action further complicates the inquiry. Nonetheless, applying the above-cited criteria to the case *sub judice,* the Court is persuaded that a stay should not issue.

First, the parties agree that Delaware law will not govern the substantive issues in the case. However, despite Cordura's assertions to the contrary,[5] there is no evidence that Illinois law will control the negotiations, performance or alleged breach of contract between Pestolite, a Delaware corporation whose principal place of business is in Lancaster, Pennsylvania, and Cordura, a Delaware corporation based in Los Angeles, California, to purchase a product which is manufactured in Pennsylvania, California and Taiwan. In addition, the situation at bar does not involve two state courts competing to adjudicate. Rather, a stay is sought in the Delaware Superior Court in favor of an action in a Federal Bankruptcy Court in Illinois. Thus, even accepting defendant's tenuous hypothesis that Illinois law is applicable, either court would confront the task of applying the law as interpreted by the Illinois Supreme Court.

Second, with respect to access to proof, Cordura fails to persuade this Court that Illinois is a more convenient forum. The defendant corporation is content to argue that since none of the events in issue occurred in Delaware, none of the relevant evidence is located in Delaware, and many potential witnesses reside in Pennsylvania and Illinois, this Court should be swayed in its favor. Pestolite counters that the majority of potential witnesses reside in Pennsylvania, California and Taiwan; in addition, the overwhelming number of relevant documents are located in Lancaster, Pennsylvania, a mere 40 miles from Delaware, in contrast to the 800 mile distance from Chicago, Illinois. The amount of proof located in Pennsylvania favors this forum. Even assuming an equal or greater number of witnesses and documents located in California, this Court finds Illinois a no more convenient forum.

As for the availability of compulsory process for witnesses, again the arguments are nearly equipoise. The officers, directors, and managing agents of both Pestolite and Cordura can be compelled to appear in the Delaware action. Similarly, the Bankruptcy Court can compel the appearance of the officers, directors, and managing agents of Pestolite and Dunhill, since both are parties to the adversary proceeding. No offer has been made by Cordura to submit to the jurisdiction of the Illinois Court.[6] Considering that the claims herein focus on alleged conduct between Pestolite and Cordura, and proof of scienter with respect to the latter party will be pivotal to disposition of the tort allegations of fraud herein, the third factor weighs in favor of this forum.

The fourth factor under consideration herein is the pendency of a similar action in another jurisdiction. The priority of filing

5. Actually, the only Illinois contact cited by Cordura is that fact that its subsidiary, Dunhill, is located and incorporated there.

6. *See Fluorocoat, Ltd. v. Fluoro-Resins, Inc.,* Del.Ch., C.A. No. 6602 (April 27, 1982), wherein the Court's grant of a stay was contingent on defendant's agreeing to submit to the jurisdiction of the other court.

in the respective courts is frequently outcome-determinative and governs whether this Court should defer to a prior action, *Fast Foodmakers v. Greisler,* supra, or impose upon the moving party the burden of demonstrating hardship in the event a stay is denied. *Moore Golf, Inc. v. Ewing,* supra. Again, the instant case exceeds the complexity of its precedents in presenting the novel situation of a Delaware claim wedged chronologically between a two-pronged bankruptcy action in Illinois.

For the purpose of determining the later filed lawsuit, Cordura argues that since the involuntary Chapter 11 bankruptcy proceeding involving Dunhill was instituted on January 14, 1980, the Delaware action filed on March 25, 1981, should be viewed as second in time. Pestolite responds that the date of the adversary claim which Dunhill filed in May, 1981, is controlling as to the relevant action in the Bankruptcy Court. In the absence of any judicial precedent for resolution of this chronological dilemma, the Court looks to the arguments of the parties and to the Rules of Bankruptcy Procedure.

As support for its position, Cordura asserts that the creditor's claims filed pursuant to the Chapter 11 involuntary proceeding is analogous to filing a complaint and that the subsequent adversary proceeding merely acknowledges contest of certain claims and introduces any counterclaims. This analysis, however, is inconsistent with the procedural scheme detailed in the Bankruptcy Rules. Absent the introduction of a counterclaim, a disputed claim remains nonadversarial and is disposed of pursuant to Rule 914. Where the objection to a creditor's claim involves a counterclaim as in the case at bar, the proceeding then becomes adversarial. Rule 306(c).[7]

Once an adversary proceeding is triggered, a distinct set of procedural rules parallelling the Federal Rules of Civil Procedure and contained in Part VII of the Bankruptcy Rules then applies. At this juncture, and not at the earlier initiation of the Chapter 11 reorganization proceeding, a complaint is filed with the court pursuant to Bankruptcy Rule 703.[8] Process, including notice of controversy, is provided for in Rule 704. The adversary case is assigned a separate docket number and its files are separated from those concerning other matters germane to the overall Chapter 11 proceeding.

Therefore, in light of the distinct procedural mechanisms which attach to the introduction of the contest and counterclaim, this Court rejects Cordura's suggestion that the adversary action was in fact merely an extension of or stopgap for the original Chapter 11 proceeding. Moreover, inasmuch as the subsequent adversarial bankruptcy proceeding initiated in May, 1981, raises the issues upon which Cordura relies in seeking a stay, this Court regards the date of that action as determinative and thus finds the Delaware suit to be first filed.

Finally, the Court must weigh all practical considerations that would make the trial easy, expeditious and inexpensive. Cordura asserts that the Bankruptcy Court in Illinois "has the benefit not only or advanced discovery and trial preparation" in addition to "the ability to consider plaintiff's claims in the context of a resolution of all claims against Dunhill." Admittedly, the findings of the Illinois court relating to Dunhill will be dispositive of the claims based purely on Dunhill's contractual liability, for which

---

**7.** The Advisory Committee's Note to Rule 306(c) states in pertinent part: "The filing of a counterclaim ordinarily *commences* an adversary proceeding subject to the rules in Part VII." [emphasis added]

**8.** The Advisory Committee's Note to Rule 703 explains:

This rule is an adoption of Rule 3 of the Federal Rules of Civil Procedure. A bankruptcy case is commenced as provided in Rule 101. A claim against the estate is made by filing a proof of claim in accordance with Rule 302. An application for relief against a party, or opposed by a party in interest, which is not otherwise designated by these rules is included in the definition of a "motion" by Rule 901(9).

Cordura stands as surety.[9] However, the gravamen of the instant complaint relates to Cordura's conduct rather than its contractual liability, specifically its alleged fraudulent intent in negotiating with Pestolite. In fact, proof of said intent will be pivotal to Pestolite's right to recovery in the instant case and certainly does not lie within the ambit of the Illinois Bankruptcy proceedings.

Aside from claims of "unnecessary duplication and expense", no hardship will inure to Cordura as a result of denying its motion to stay. Moreover, Cordura has presented evidence that the Illinois action "will go to trial shortly regardless of resolution of this motion". If such is the case, then Cordura can present any determination therefrom, in favor of Dunhill, in defense of its liability herein as guarantor of Dunhill's debts.

Should the outcome in the Illinois action favor Pestolite, then every issue in this case would remain unresolved. At that juncture, Pestolite would have been prejudiced by the delay in conducting its discovery. Thus, the Court is satisfied that practical considerations also militate in favor of denying a stay in this case.

In conclusion and based on the foregoing analysis, the Court has determined that defendant Cordura's motion to stay these proceedings should be denied.

IT IS SO ORDERED.

---

9. However, it remains for this Court to resolve the issue of liability on the contract negotiated between Pestolite and Cordura for the latter's own purchase of 40,000 units of the product.