# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **FLOYD WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. N18C-04-225 DCS** |
| | ) | |
| **PREFERRED INVESTMENT** | ) | |
| **SERVICES, INC., EDWIN J. SWAN,** | ) | |
| **ANNE C. SWAN, AND** | ) | |
| **MARQUEIT JONES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Submitted: March 27, 2019
Decided: April 26, 2019

**Motion to Dismiss**
**DENIED**

**The Case is STAYED.**

## OPINION

Floyd White; *Pro Se* Plaintiff (with Edward J. Fornias, III, Esq. as Counsel re: Rule to Show Cause)
E. Calvin Harmon, Jr., Esquire; Attorney for Defendant

**STREETT, J.**

The issue before the Court concerns whether the Instant Case (a fraudulent transfer action; "Case #3" or the "Instant Case") should proceed simultaneously with *T & H Bail Bonds, et al. v. Preferred Investment Services, Inc.* (a judgment action; "Case #2").[1] Although 10 *Del.C.* § 5031[2] does not appear to prohibit a party from simultaneously proceeding in a fraudulent transfer action while a judgment/garnishment action is ongoing, the parties' roles in Case #2 have created an unusual situation in relation to Case #3 which prompts this Court to Temporarily Stay the Instant Case pending resolution of issues in Case #2.

Mr. Floyd White ("White") is Plaintiff in the Instant Case. He is also the assigned Plaintiff and garnishor in Case #2. Attorney E. Calvin Harmon, Jr., Esq. ("Harmon") represents Defendants Preferred Investment Services, Inc. ("PISI"), Edwin J. Swan ("Swan"),[3] Anne C. Swan, and Marqueit Jones in the Instant Case.

---

[1] *T & H Bail Bonds, Ted L. Pridgen, Robert Lubach, Joanne M. Lubach, Melissa M. Matarese, Jerzy Wirth and Wirth Financial Services, LLC. v. Preferred Investment Services, Inc.* - C.A. No. N14J-01761.

[2] 10 *Del. C.* § 5031. Execution Attachment:

> The plaintiff in any judgment in a court of record, or any person for such plaintiff lawfully authorized, may cause an attachment, as well as any other execution, to be issued thereon, containing an order for the summoning of garnishees, to be proceeded upon and returned as in cases of foreign attachment. The attachment, condemnation, or judgment thereon, shall be pleadable in bar by the garnishee in any action against the garnishee at the suit of the defendant in the attachment. Goods which are perishable, or will create a charge by keeping, may be sold on the order of a judge as in cases of foreign attachment.

[3] Mr. Swan was the owner and principal of PISI and also appears to be a garnishee in Case #2 and the client of Harmon in both cases.

2

Harmon also represents PISI, Swan, and some of the other garnishees in Case #2. This has created a tangled interplay of responsibilities which has generated conflict of interest issues; threatens to prejudice the due process rights of White, PISI, the other defendants in the Instant Case and the garnishees in Case #2; undermines Delaware public policy; causes significant confusion among the parties; has resulted in extensive litigation; could result in increased litigation; and could unnecessarily expend resources.[4] The Court concludes that under the particular and distinct circumstances of both cases,[5] a temporary stay of the Instant Case, until issues in

[4] White and Harmon have each contributed to the complications in Case #2 which significantly impact Case #3. White wants to control the representation of PISI and the garnishees. PISI has twice been found to have committed fraud on the Court, once in Chancery Court (Case #1) and again later in the Superior Court (Case #2).

[5] The Commissioner assigned to Case #2 has characterized Case #2 as being "in a category by itself." As such, the Commissioner allowed White to issue subpoenas to obtain information relating to PISI that the Commissioner felt might go too far in an ordinary case. The Commissioner stated:

> Now, in your run-of-the mill case, that might be different. But this case is in a category by itself. I mean, it really is. In my career, I have never seen a Chancery Court do what they did [awarding $307,254.76 in fees and expenses against PISI who was the plaintiff in the Chancery Court case]. And then for your [Harmon's] client [PISI/Swan] to have done the exact same thing that he did in Chancery Court and got caught, and has - - and had a huge judgment issued against him there where he was the plaintiff, to have done the exact same thing there that he did here in the Superior Court later, is just mind-boggling, and, frankly, insulting to the Court. So Mr. White, in the run-of-the-mill case, I might agree that [White's] subpoenas are - - go too far. But, in this case, I don't see that, because the history of this case dictates that [White's] requests are reasonable, in light of the efforts that [PISI/Swan] has made in the past to hide assets and to change things.

Motion to Quash Subpoena, Hearing (June 14, 2018) Transcript at 20-21.

3

Case #2 are resolved, is in the interest of justice and an effective safeguard of the parties' rights. It is less severe than dismissal.

## Introduction

In 2010, Preferred Investment Services, Inc. ("PISI"), through its attorney, Harmon, brought a breach of contract action in Chancery Court against several bail bond companies (Case #1).[6] In 2014, the Defendants successfully defended the lawsuit. The Chancery Court determined that PISI owed more than $300,000.00 to T & H and the other bail bond companies.[7] T & H Bail Bonds, et al. became the "Original Judgment Creditors."

In 2014, the Original Judgment Creditors filed a judgment action against PISI (Case #2) to collect on the debt created by the Chancery Court decision (Case #1).

---

[6] *Preferred Investment Services Inc. v. T & H Bail bonds Inc., Ted L. Pridgen, Robert Lubach, Joanne M. Lubach, Melissa M. Matarese, Jerzy Wirth and Wirth Financial Services, LLC.* – No. 5886-VCP (Case #1).

The Chancery Court issued various Opinions in Case #1: *Preferred Investment Services, Inc. v. T&H Bail Bonds, Inc., et al.*, 2013 WL 3934992 (Del. Ch. July 24, 2013) (finding for the plaintiff on some counts and for the defendants on some counts); *Preferred Investment Services, Inc. v. T&H Bail Bonds, Inc., et al.*, 2013 WL 6123176 (Del. Ch. Nov. 21, 2013) (denying motion for reargument and request for attorney's fees); *Preferred Investment Services, Inc. v. T&H Bail Bonds, Inc., et al.*, 2014 WL 1292362 (Del. Ch. Mar. 25, 2014) (awarding attorney's fees); *Preferred Investment Services, Inc. v. T&H Bail Bonds, Inc., et al.*, 2014 WL 1650941 (Del. Ch. Apr. 23, 2014) (awarding expert fees).

[7] The current amount that PISI owes appears to be approximately $340,000.00 because, in 2015, a Superior Court Commissioner in Case #2 awarded the Original Judgment Creditors an additional $1,250.00 in attorney's fees and imposed sanctions of $30,700.00 on PISI for failure to respond to Court Orders and Plaintiff's valid discovery request.

Discovery issues in Case #2 were referred to a Superior Court Commissioner.[8] Plaintiffs in Case #2 (the Original Judgment Creditors) were represented by Neil Lapinski, Esq. Defendant PISI continued to be represented by Harmon. In 2014 and 2015, Plaintiffs filed writs of Fieri Facias Garnishment against various bail bond companies, as the purported third party debtors of PISI, in an effort to collect on the judgment.[9] In 2014, Mr. Lapinski also filed writs of Attachment against the Prothonotaries for New Castle, Kent, and Sussex Counties.[10]

On July 8, 2015, three of the Original Judgment Creditors assigned their rights to pursue collection of the judgment to Mr. Jerzy Wirth and Wirth Financial Services ("Wirth" and "WFS").[11] On January 25, 2017, Wirth and WFS assigned all of their rights to White.[12]

---

[8] All references to "Commissioner" in this Opinion concern Case #2.

[9] Attorney Lapinski appears to have represented all of the Original Judgment Creditors until he withdrew on September 27, 2016. It is not clear how Mr. Lapinski identified or selected the entities upon which he filed writs.

[10] The writs were served on the Prothonotaries to attach refundable cash bails purportedly owed to PISI. On September 1, 2015, the Commissioner held that the Court is without authority to issue the writs of Attachment against the Prothonotaries.

[11] Robert Lubach, Joanne M. Lubach, and Melissa M. Matarese assigned their rights, titles, and interests in and to the Chancery Court judgment to Jerzy Wirth and Wirth Financial Services, LLC. The parties assigned their interests to Jerzy Wirth and Wirth Financial Services to avoid paying their share of the unpaid attorney's fees.

[12] There is no indication that T & H Bail Bonds and/or Ted L. Pridgen assigned their interests to the Lubachs, Matarese, Wirth, WFS, Floyd White, or to anyone else.

Since that time, White, as a *pro se* litigant, has vigorously pursued the ongoing garnishment actions and sought judgment against several of the garnishees.[13] Harmon, in addition to representing PISI, also represents some of the garnishees (including Swan).[14]

On September 18, 2018, White, who in some respects stands in the shoes of PISI in seeking garnishment, filed a Motion to Disqualify Harmon. White contended that it is a conflict of interest for Harmon to represent both PISI and PISI's purported

---

[13] In February of 2018, White filed a writ of attachment fi. fa. on Attorney Lapinski, presumably seeking documents related to Mr. Lapinski's former representation of the Original Judgment Creditors. Mr. Lapinski's office handed over one box of documents to White. Mr. Lapinski (who was not present when the box was handed over to White) claimed to not know the exact contents of the box but said that the documents in the box were related to Case #1. This has been the subject of litigation.

Also, in March of 2018, White filed Notices of Subpoena upon several banks seeking information pertaining to PISI. On June 19, 2018, the Commissioner upheld the subpoenas and on October 30, 2018, the Delaware Superior Court affirmed that decision. *T & H Bail Bonds v. Preferred Investment Services, Inc.* 2018 WL 5619703, at *2 (Del. Super. Oct. 30, 2018).

Additionally, beginning on August 20, 2018, White filed approximately 22 Motions for Judgment Against Garnishees (the Motions sought default judgment against the third party garnishees based on the writs that Attorney Lapinski had filed in 2014 and 2015) alleging that they owed money to PISI or were in possession of property belonging to PISI. On December 6, 2018, the Commissioner held a hearing and several of the purported third party garnishees claimed that they had not been properly served. On December 11, 2018, the Commissioner denied the Motions for Judgment and ordered the purported third party garnishees to answer the writs of Fieri Facias Garnishment. Most of the purported third party garnishees have denied that they are in possession of assets or property belonging to PISI. As of this date, there has not been a decision concerning whether the writs are enforceable.

[14] On October 4, 2018, Harmon stated that PISI and some of the garnishees consented in writing to Harmon's joint representation. Garnishee's Response to Motion to Disqualify Counsel, at 4.

6

debtors.[15] On December 11, 2018, the Commissioner ordered that "[t]he parties are to discuss the *potential conflicts of interest* and if the matter is unable to be resolved consensually, the Court will schedule a further hearing as appropriate."[16] On September 25, 2017, White filed a Motion for Relief from Fraudulent Transfer [by PISI].[17] The Commissioner suggested that this should be a separate action.

Presently, Harmon continues to represent PISI and several garnishees (including Swan) in Case #2 while White, who possesses the rights of (some of) the Original Judgment Creditors to pursue the judgment against PISI, seeks to determine who should represent PISI and/or some of the garnishees in Case #2.[18]

As of this date, litigation involving White, PISI (represented by Harmon), some of the purported garnishees including Swan (also represented by Harmon), and other garnishees (some represented by other attorneys) has been complicated. Over the course of approximately five (5) years, Case #2 has involved numerous motions, a considerable number of court hearings, several attorneys,[19] and approximately 350

---

[15] In the Order on Motion to Disqualify Counsel, the Commissioner wrote that White filed a Motion to Disqualify Harmon as "counsel to both PISI, as well as some of the garnishees."

[16] Order on Motion to Disqualify Counsel, at 2 (emphasis added).

[17] White claims that PISI transferred property to avoid paying the judgment debt.

[18] Motion to Disqualify, at 3 (White appears to be asserting that he (White) can deny PISI's and third party garnishees' right to waive Harmon's alleged conflict of interest).

[19] Various garnishees appear to be represented by Douglas A. Shachtman, Esq., Dale Bowers, Esq., Brian Jordan, Esq., or Jonathan Layton, Esq. Other bail bond company garnishees appear to be unrepresented (and whether they can proceed *pro se* is to be determined).

7

transactions. Despite extensive litigation, many issues remain unresolved in Case #2.

On April 23, 2018, per the Commissioner's suggestion, White filed the instant fraudulent transfer claim as a separate lawsuit and named PISI, Swan, Anne C. Swan, and Marqueit Jones as the Defendants (the "Instant Case" or "Case #3"). As of this date, litigation in Case #3, concerning PISI's Motion to Dismiss and discovery issues which overlap Case #2, has been delayed due to the unresolved issues in Case #2.

Based on White's stance in Case #2 that only he (White) could waive any conflict of interest concerning PISI and its garnishees[20] and his apparent assertion that he is entitled to privileged communications between PISI and its attorney (Harmon) and possibly the privileged communications between garnishees and Harmon in Case #2,[21] unresolved discovery issues remain in Case #2. Those unresolved issues potentially impact Case #3. As such, this Court (in Case #3)

---

[20] White wrote that "[He] White stands in every respect in the same position of defendant PISI in regards to PISI's right to recover from the [third party] garnishees, accordingly, it is White who must give permission to Harmon to represent the [third party] garnishees. To which he denies the right." Motion to Disqualify, at 3.

[21] White claimed that PISI "has withheld key information from [White]" and that "Harmon's knowledge of PISI's accounts receivables, confidential business and lending records and practices will unfairly advance garnishees position to [White's] harm." Motion to Disqualify, at 4-5. White further contended that "Harmon's intimate knowledge of … PISI previous lending practices gives garnishees unfair insider information that would otherwise not be available to [White]" and that PISI provided Harmon with access to the "playbook" and "modis operandi" of PISI in business and lending matters and "access to records unaltered or withheld from [White]." Motion to Disqualify, at 5-6.

directed the parties to submit supplemental briefs addressing whether there is a conflict of interest issue concerning White that would merit dismissal of Case #3.[22]

On February 1, 2019, White submitted a supplemental brief wherein he acknowledged that he is a lay person and does not represent PISI. PISI submitted its supplemental brief moving the Court to dismiss Case #3 "on account of Plaintiff's concurrent conflict of interest in the present matter."[23]

On February 18, 2019, this Court (Case #3) filed a Rule 41(e) notice and scheduled a Rule to Show Cause Hearing as to why Case #3 should not be dismissed for Conflict of Interest. On March 6, 2019, White filed his Response and, five days later, Edward J. Fornias, III, Esq. filed an Entry of Appearance on behalf of White.

---

[22] Delaware Superior Court Civil Rule 41(e):

> The Court may order an action dismissed, sua sponte, upon notice of the Court, for failure of a party diligently to prosecute the action, for failure to comply with any rule, statute, or order of the Court, or for any other reason deemed by the Court to be appropriate. In the event that the Court shall conclude, sua sponte, that dismissal upon any of the foregoing grounds appears appropriate, the procedure for such dismissal shall be as follows: The Prothonotary shall forward to the party a notice directing that the party show cause why the action should not be dismissed for the reasons stated in the notice. The notice shall direct the party to respond within fifteen (15) days from the date of the notice. After consideration of such response, the Court shall enter an order dismissing the action or maintaining jurisdiction of the case. If a response is not filed within the time allowed, the dismissal shall be deemed to be unopposed. If the Court is satisfied that the action should be dismissed, it shall enter an order of dismissal. Upon entry of any order of dismissal, the Court shall specify the terms thereof including provision for payment of costs.

[23] Defendant's Response to the Court's Letter.

On March 27, 2019, the Hearing to Show Cause was held and the Court reserved decision. The Court's Opinion follows.

## Parties' Contentions

PISI writes that White's "dual participation in the Garnishment Action [Case #2] and the Fraudulent Transfer Action [Case #3] is a concurrent conflict of interest under Delaware law."[24] PISI submits that the Delaware Rules of Professional Conduct's prohibition against conflicts of interest apply to White and that "… conflict of interest rules are to protect the client from having confidential information used against him/her in adverse proceedings and to maintain public confidence in the integrity of the justice system."[25]

PISI elaborates that "[White's] participation in [Case #2] will provide [White] with confidential information pertaining to PISI that will materially advance [White's interests in Case #3], since both actions include PISI's accounting, transactional, and business activities."[26] PISI suggests that "[i]t is also very likely that [White] is [now] using the Garnishment Action [in Case #2] to obtain

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

information in support of [White's] burden of proof in [Case #3], specifically concerning insolvency, fraudulent transfers, and proof of assets."[27]

In reply, White writes that he "does not represent PISI or any garnishee."[28] However, White concedes that he has, "in effect, elected to place himself in the debtor's [PISI's] shoes vis-à-vis the garnishees [in Case #2]"[29] because "the judgment creditor [White] takes the place and stands in the shoes of the judgment debtor [PISI]."[30] Moreover, White maintains that "any claim, defense or new matter such as a conflict of interest of garnishee's counsel [Harmon] that PISI [the judgment debtor] could have asserted can be made by the garnishor [White]."[31]

At the Hearing to Show Cause, White, through his counsel, argued that the Court should simultaneously proceed with both cases. White asserted that although White 'stands in the position of PISI', White could only obtain PISI's information through discovery. As to White's claim that he controls PISI's rights and decisions in Case #2, White's counsel stated that White "overtalked" himself and White did not mean that he (White) represents PISI. However, under questioning from the

---

[27] *Id.*

[28] Plaintiff's Brief, at 6.

[29] *Id.* at 8.

[30] *Id.* at 10.

[31] *Id.* at 11.

11

Court, White's counsel stated that he is prepared to stand on all of the papers that White filed.

At the hearing, PISI argued that White has not withdrawn his motion to disqualify Harmon in Case #2, that White is asserting that PISI and third party garnishees must use White's choice of counsel in Case #2, that White can paralyze PISI in Case #2 by asserting control over PISI, and that White will be able to obtain any information from PISI that he wants in Case #2 and use it to White's advantage in Case #3.

## Standard of Review

The law is well settled that "the Superior Court has the power to grant a stay."[32] The Court's authority to stay an action is "incident to the inherent power of a court to exercise its discretion to control the disposition of actions on its docket in order to promote economies of time and effort for the court, litigants, and counsel"[33] and the Court may stay an action *sua sponte*.[34] The question of whether to stay an action "falls squarely within the province of the trial court's discretion and is to be

---

[32] *Miller v. Falconetti*, 1988 WL 116412, at *1 (Del. Super. Oct. 21, 1988).

[33] *Department of Natural Resources & Environmental Control v. Mountaire Farms of Delaware, Inc.*, 2019 WL 1430620, at *5 (Del. Super. Mar. 29, 2019).

[34] *Cummings v. Estate of Lewis*, 2013 WL 979417, at *10 (Del. Ch. Mar. 14, 2013) (The Chancery Court held that it can stay an action *sua sponte*).

determined in light of all the facts and circumstances and in the interest of expeditious and economic administration of justice."[35]

## Discussion

Generally, a creditor may pursue a collection action and also seek other remedies against a debtor in separate litigation. However, Case #1 and Case #2 are not ordinary and are "in a category by itself."[36] There are several issues that need to be resolved in Case #2 in order for Case #3 to go forward. As such, proceeding in

---

[35] *Pestolite, Inc. v. Cordura Corp.*, 456 A.2d 1235, 1237 (Del. Super. Nov. 29, 1982).

*See also, Boston VLCC Tankers, Inc. II v. Bethlehem Steel Corp.*, 415 A.2d 492, 494 (Del. Super. May 7, 1980) where the Delaware Superior Court has held that "[t]he factors to be considered in determining whether to stay an action are essentially the same as those considered in determining whether to grant a dismissal under the forum non conveniens doctrine":

> 1) Applicability of Delaware law:
> 2) Relative ease of access to proof;
> 3) Availability of compulsory process for witnesses;
> 4) The pendency or nonpendency of a similar action or actions in another jurisdiction; and
> 5) All other practical considerations which would make the trial easy, expeditious and inexpensive.

In the Instant Case, which does not involve jurisdictional or forum non conveniens issues, factors 1, 3, and 4 appear to be inapplicable (because they appear to be the same for Case #2 and Case #3 and there are no actions in another jurisdiction). However, factor 2 (access to proof through discovery) is an issue, and under factor 5, the Court in Case #3 is able to consider other practical considerations which would make the trial easy, expeditious and inexpensive. *See Miller v. Falconetti*, 1988 WL 116412, at *1 (Del. Super. Oct. 21, 1988) (the Delaware Superior Court stayed an action pending the resolution of a related Delaware Family Court action because, under factor five, the Court found that "there will be duplication of time, energy, or resources if both actions go forward. Furthermore, it appears that the outcome of the Family Court action may bear directly upon the issue of damages in this case.").

[36] See f.n. 5.

13

simultaneous actions has created difficulties of proof, delay, and additional expenses.

The behavior of PISI (and its owner Swan) has been the source of much litigation in Case #2. The Commissioner wrote that there "is ample evidence"[37] that PISI has acted in a deceptive manner in Case #2 and that "PISI has delayed and obfuscated at every turn in the proceedings in [Case #2]."[38] In addition, the Commissioner stated that PISI has committed fraud upon the Court twice, once in the Chancery Court case (Case #1) and once in Case #2. As such, the Commissioner imposed sanctions on PISI in the amount of $30,700.00[39] and has allowed White to issue subpoenas for PISI's information that might not be allowed in an ordinary case.[40]

White has also added to the confusion. In the Instant Case, White's status as an unrepresented litigant is murky;[41] White has argued in Case #2 that he (White)

---

[37] The Commissioner noted that PISI violated a discovery order and intentionally converted Excel data into hard copy documents to hide relevant information relating to PISI's bail proceeds.

[38] Commissioner's Order on Plaintiff's Motion for Writ of Fieri Facias Garnishment and Sanctions.

[39] The Commissioner held that the Court could not sanction Swan directly because it lacks the equitable remedy of piercing the corporate veil.

[40] The Commissioner stated that "in the run-of-the-mill case, I might agree that [White's] subpoenas ... go too far." Motion to Quash Subpoena, Hearing (June 14, 2018) Transcript at 20.

[41] It is unclear whether the attorney who made an appearance in Case #3 on White's behalf at the Hearing to Show Cause continues as White's attorney in Case #3. Mr. Fornias stated that there had been no discussion regarding whether he would represent White in Case #3 beyond his

should have ultimate authority to decide who should represent PISI (which is represented by Harmon); and, even more confusingly, that he (White) should have ultimate authority to decide whether Harmon or a replacement should represent some of the purported third party garnishees, including Swan.

Also, whether some of the purported garnishees were properly served, whether White is the proper party to pursue the garnishment action, and the scope of discovery are currently unresolved issues that have contributed to the protracted litigation in Case #2.[42] Moreover, Case #2 is further complicated by the fact that the

---

appearance at the hearing. However, as of this date, Mr. Fornias has not filed a motion to withdraw.

[42] Some of the litigation in Case #2 involved White's issuance of a writ of attachment fi. fa. in 2018 upon the original judgment creditor's attorney seeking information on Case #1. PISI filed a Motion to Quash and Contempt contending that this was a violation of a Protective Order by the Chancery Court and Superior Court deeming certain document 'attorney eyes only.' On June 19, 2018, the Commissioner denied the Motion and ordered White to not disseminate the documents to third parties beyond what is reasonably necessary to assist in the collection of the judgment debt.

Also, in 2018, in Case #2, White filed Notices of Subpoena upon several banks seeking information pertaining to PISI. On March 16, 2018, PISI filed a Motion to Quash White's subpoenas (and, on March 27, 2018, PISI filed a Supplemental Motion to Quash) contending that the subpoenas exceeded the scope of discovery and were not reasonably calculated to lead to PISI's assets. On June 19, 2018, the Commissioner denied the Motion to Quash. On October 30, 2018, the Delaware Superior Court denied PISI's Motion to Reconsider the Commissioner's Order. *T & H Bail Bonds v. Preferred Investment Services, Inc.*, 2018 WL 5619703, at *2 (Del. Super. Oct. 30, 2018) ("While seemingly broad in scope, all of the targets are apparently connected to Judgment Debtor's business and financial dealings.").

In addition, at the December 6, 2018 hearing before the Commissioner in Case #2, it was also brought to the Commissioner's attention that White had not produced certain documents (the record does not indicate the nature of these documents) because White claimed that the documents were the subject of a protective order (presumably White was referring to the protective order issued by the Chancery Court and Superior Court making certain financial and bank records confidential and for attorneys eyes only). The Commissioner held that Harmon may review the

judgment debtor's attorney also represents some of the third party garnishees and White's Motion to Disqualify must be finally resolved.

As such, until there is clarification (and resolution) of some of those ongoing issues which have been litigated for nearly five (5) years and continue to be litigated, there is uncertainty as to the parties' specific roles, the possibility of shifting responsibilities, and difficulty in establishing discovery parameters. These unresolved issues have a direct impact on dispositive motions and discovery in Case #3. Those unresolved issues in Case #2 have already impeded the expeditious and economic administration of justice in the simultaneous advancement of the Instant Case (Case #3) which is interconnected.

Furthermore, although Mr. Fornias's non-committal response as to his role in Case #3 implies that White continues *pro se* (in Case #3), Case #2 has already shown that this *pro se* Plaintiff requires careful oversight. White is not an inexperienced

---

documents in compliance with the protective order as "attorneys eyes only" and that White is to produce any documents that he believes are relevant to the case for Harmon to review. See also f.n. 7.

litigator,[43] and the law is clear that the Court "will accommodate *pro se* litigants only to the extent that such leniency does not affect the substantive rights of the parties."[44]

If White were an attorney, then his assertions in Case #2 that he controls PISI's rights (beyond traditional discovery and collection) means that he is, in effect, asserting authority and control over all of PISI's communications, records, etc. in general and in relation to Harmon's clients – PISI and some of the garnishees (including Swan) – in Case #2 while simultaneously proceeding in direct opposition

---

[43] In addition to Case #2 and Case #3, White was a *pro se* plaintiff in the following cases that involve bail bonds companies: *JDT Jerzy Wirth v. Top Bail Surety Inc., et al.* – N14C-02-137; *Jerzy Wirth and Floyd White v. T & H Bail Bond, Inc.,* – N14C-10-028.

White was also a *pro se* plaintiff in the following cases: *Floyd White v. Theodorick A. Sparks* – N16J-02207; *White, Floyd et al. v. Burnbrae Condominium Association et al.* – 309-VCN; *Floyd White v. Flora J. Sutalo* – SN07J-12-478.

White was a *pro se* defendant and *pro se* counterclaim plaintiff in *Burnbrae Maintenance Association v. Floyd White, et al.* – N11C-05-161 ((Interestingly, Attorney Fornias (who made an appearance for White in Case #3) represented Burnbrae and opposed White)).

Additionally, White was made assignee of judgment (after the judgments) in the following cases: *Jerzy Wirth v. Matt Spino, Nuno Araujo, and EP2, Inc.* – N11C-12-259; *Jerzy Wirth v. Jerry McGonogle, Jr.* – N11C-12-260; *Jerzy Wirth v. Michael A. Azeglio* – N11C-12-254; *Jerzy Wirth v. Geoff J. Hasler* – N12J-03762.

Also, White filed a Motion to Intervene in *Jerzy Wirth v. John R. Seitz, et al.* – N14C-07-13, which was denied.

[44] *Damiani v. Gill,* 2015 WL 4351507, at *1 (Del. July 14, 2015) ("[t]here is no different set of rules for *pro se* plaintiffs, and the trial court should not sacrifice the orderly and efficient administration of justice to accommodate the unrepresented plaintiff."); *Matter of Elzufon,* 1991 WL 89811, at *6 (Del. Super. May 7, 1991) ("[i]t is beyond dispute that the courts of this State have the inherent power to regulate the conduct of those who appear before it.").

17

to PISI and garnishee Swan, represented by Harmon, in Case #3. The Delaware Lawyer's Rules of Professional Conduct would prohibit such a result.

Under Delaware Lawyer's Rules of Professional Conduct, a concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.[45]

Thus, unless informed consent is obtained, "a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter ..."[46] When the conflict of interest involves former representation, "disqualification [of a lawyer] is proper when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client."[47]

White's *pro se* status should not exempt him from the same professional conduct rules that would apply to attorneys. Otherwise, the highly protected rights

---

[45] Delaware Lawyer's Rules of Professional Conduct, Rule 1.7(a)(1)-(2).

[46] Delaware Lawyer's Rules of Professional Conduct, Rule 1.7, Comment 6.

[47] *Madukwe v. Delaware State University*, 552 F.Supp.2d 452, 458 (Del. D. May 5, 2008).

of parties would be eviscerated by a party appearing (at random stages in a case) on his or her own behalf. White's dual roles are competing roles that could adversely affect White's, PISI's, and PISI's debtor's rights in Case #2, prejudice PISI's and the other Defendants' due process right to a fair trial in Case #3, and undermine Delaware public policy goals to protect attorney-client communications and preserve public confidence in the judicial system. Although this case does not present a typical conflict of interest because White is not an attorney, the risk could be the same – unfair prejudice to PISI and third party garnishees in Case #2 and unfair prejudice to PISI and Swan in Case #3.[48] Indeed, the Court in Case #2 has already undertaken examining the potential conflict arising from Harmon's dual representation.[49] Thus, allowing the Instant Case (Case #3) to proceed at this time could cause potential conflicts in Case #2 to spill over and impact the orderly progress of Case #3. Moreover, although conflict issues remain undecided in Case

---

[48] Although White (and Mr. Fornias) have not clarified White's *pro se* status, ultimately that status has little impact on the Court's determination that a stay is appropriate. "Lawyers play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship to our legal system. The Rules of Professional Conduct, when properly applied, serve to define that relationship."); *Id.* at para. 20 ("The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies." Delaware Rules of Professional Conduct, Preamble, at para. 13.

[49] Despite the Commissioner's order that the parties "discuss the potential conflicts of interest," there is no indication that the parties have resolved any potential conflicts of interest in Case #2 and the issue continues to complicate discovery in Case #3.

#2, the advancement of the litigation in that case makes it better suited to resolve the issues and forestall possible inconsistent rulings.[50]

In addition, White's standing in these matters has not yet been finally determined. White purchased some of the interests of the Original Judgment Creditors, but may not have purchased the entire judgment. Additionally, while White is correct that a judgment creditor stands in the shoes of its debtor to collect from any purported third party garnishees, White's attempts to control who can represent PISI and/or Swan and other purported third party garnishees (in Case #2) goes beyond that commonly accepted practice.[51]

Furthermore, White's concurrent participation in Case #3 creates a situation of divided loyalties.[52] So too, White's simultaneous participation in both cases

---

[50] Harmon represents PISI in Cases #2 and #3. Harmon also represents several third party garnishees in Case #2. It is difficult for PISI, the third party garnishees, and White to effectively plan or respond because of the apparently contradictory roles of White and Harmon. This situation has been the source of and generated five years of litigation (including involving third party purported garnishees) without providing clarification for either party (or the third party garnishees in Case #2).

[51] This is particularly so when PISI and the purported third party garnishees (including Swan) provided consent for Harmon's joint representation. Another instance involves White obtaining documents from the Original Judgment Creditors' former attorney, Mr. Lapinski, by filing a writ of garnishment on Mr. Lapinski. The Commissioner, noting (at a June 14, 2018 hearing) that PISI has a history of hiding assets, allowed White to retain the documents but ordered White to not disseminate the information turned over to him to third parties "beyond what is reasonably necessary to assist in the collection of the judgment…" Commissioner's June 19, 2018 Order.

[52] White, arguably, might not fully assert PISI's or Swan's rights or act in PISI's or Swan's best interests in Case #2 if those interests are in conflict with White's interests in Case #3 while preventing PISI, PISI's attorney, Swan, and other garnishees from being able to effectively litigate in Case #2. As such, PISI and/or garnishees may be prejudiced in Case #2.

20

provides an incentive for White to attempt to control PISI's and its representation of purported third party garnishees, litigation, and relationship in Case #2 in order to elicit confidential information from those parties to which he might not ordinarily be entitled that would be helpful to White and adverse to PISI in Case #3.[53] Along these same lines, Harmon's dual representation of PISI and (some of) PISI's purported debtors in Case #2 (including Swan) in addition to representing PISI, Swan, and the other Defendants in Case #3 may potentially hinder White's ability to obtain a true picture of PISI's finances in both cases. The Delaware Lawyer's Rules of Professional Conduct were intended to prevent this type of manipulation and prejudice to parties.

The Delaware Supreme Court has held that the U.S. Constitution "imposes on the States the standards necessary to ensure that judicial proceedings are

---

[53] It is possible that White could gain access to PISI's attorney's work product and attorney/client communications. If White controls PISI's rights in Case #2, he would be expected to assert those rights to protect PISI's interests. Thus, it may be necessary for White to examine PISI's confidential information in order to determine PISI's interests. As such, White could gain access in Case #2 to PISI's private information such as financial records, attorney-client communications, attorney work product, and PISI's litigation "playbook' and modis operandi and then use that information against PISI in Case #3 without having to strictly follow the rules of discovery in Case #3 (particularly since White would not face attorney sanctions). Hence, PISI's confidential information might not be protected by the rules of discovery in Case #3 thereby jeopardizing the due process rights of PISI and Swan in Case #3.

fundamentally fair."[54]  "A fair trial in a fair tribunal is a basic requirement of due process."[55]  This requirement applies to Delaware Courts.[56]

Here, simultaneous litigation potentially jeopardizes both parties' due process rights in Case #3.  PISI, Swan, and the other Defendants are in danger of losing important protections that are necessary to achieving fair and effective litigation (including the attorney client privilege and the attorney work product privilege) in Case #3.  The attorney-client privilege must be protected because it "promote[s] freedom of consultation of legal advisers by clients"[57] and extends "to all communications, whether written or oral, made for the purpose of facilitating the rendition of professional legal services."[58]  The work product doctrine is equally important because it "protect[s] the privacy of lawyers in their work and encourag[es] the freedom of lawyers from interference in the task of preparing their clients' cases for trial."[59]

---

[54] *Orville v. Division of Family Services*, 759 A.2d 595, 598 (Del. Mar. 30, 2000).

[55] *Sullivan v. Mayor of Town of Elsmere*, 23 A.3d 128, 135 (Del. June 17, 2011) ("A fair trial in a fair tribunal is a basic requirement of due process that applies to administrative agencies as well as to courts.") (internal quotation marks removed).

[56] *Id.*

[57] *Brett v. Berkowitz*, 706 A.2d 509, 513 (Del. Feb. 27, 1998).

[58] *Id.*

[59] *Hoechst Celanese Corp. v. National Union Fire Insurance Co. of Pittsburgh Pennsylvania*, 623 A.2d 1118, 1126 (Del. Super. Feb. 21, 1992).

Because Case #2 and Case #3 are closely related (both involve PISI's assets, receivables, and outflows), arise from the same Chancery Court decision (Case #1), and PISI's attorney represents PISI (and the interests of Swan) in all three cases and represents some of the other purported garnishees in Case #2, it is not unrealistic to believe that many of PISI's and garnishees' (including Swan's) communications with Harmon in Case #2 would relate to the same issues in Case #3, and that White could inappropriately obtain and inappropriately seek to use the contents of those communications in Case #3.

Furthermore, because White is asserting (and Mr. Fornias "stands by" that assertion) that White is the only party who holds the right to waive a conflict of interest in Case #2, it is possible that White will be allowed access to PISI's and Swan's attorney's strategy and preparation in Case #2 to determine whether PISI's and Swan's interests in both cases are harmed by Harmon's alleged conflict of interest. As such, because PISI's attorney's work product in Case #2 and Case #3 are potentially related and intertwined, the work product privilege might not be able to protect PISI's attorney's work product relating to Case #3. Moreover, this privilege may prejudice White's ability to obtain a fair and accurate accounting of PISI's and Swan's finances which would be needed in Case #3.

Additionally, allowing Case #3 to proceed concurrently with Case #2 undermines Delaware public policy goals of protecting attorney-client

communication and public confidence in the judicial system.[60] In this particular and convoluted case, public confidence in the judicial system could be damaged if both cases proceed simultaneously. Moreover, White's dual litigation has the potential to weaken the protections afforded clients simply because a party is acting *pro se* and believes himself beyond the Delaware Lawyer's Rules of Professional Conduct.[61]

Furthermore, White's and Harmon's potentially conflicting assertions and positions in the two cases have already created confusion among the parties (including statute of limitations issues and discovery) in Case #3 that could burden the resources of the Court and increase expenses for the parties. Increased use of court resources, additional hearings, and increased litigation to deal with the tangle that now exists are readily foreseeable. Indeed, the Court in the Instant Case (Case #3) has already been impacted because the unresolved issues in Case #2 have delayed discovery (and resolution of a dispositive motion) in the Instant Case.[62]

---

[60] It is evident that protecting attorney-client communications is a Delaware public policy goal from the fact that the attorney-client privilege has been codified in Rule 502 of the Delaware Rules of Evidence. *See also In re Quest Software Inc. Shareholders Litigation,* 2013 WL 3346034, at *3 (Del. Ch. July 3, 2013) (Protecting attorneys' communication with their clients is "necessary to the effective functioning of the legal system as a whole.").

[61] *State v. Robinson,* 2018 WL 2085066, at *7 (Del. Super. May 1, 2018) (The purpose of the attorney client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.").

[62] In addition, in the Instant Case, PISI, Swan, and the other Defendants have filed a Motion to Dismiss based on statute of limitations grounds. The Court in Case #3 has not been able to resolve

24

Lastly, the third party garnishees are entitled to timely resolution of the issues pending in Case #2. The writs of garnishment were purportedly served in 2015 and White's attempts to obtain default judgment re-ignited the disputes. Continuing to proceed with Case #3 and its tangle of discovery issues will impact Case #2. Staying Case #3 will allow Case #2 to move forward with less confusion and litigation to eventually reach closure.

Here, the Court concludes that staying Case #3, pending resolution of issues in Case #2, is the most appropriate action.[63] Resolution of the issues in Case #2 will help to eventually guide, resolve, or clarify the issues in the Instant Case (Case #3). A stay will allow the Court and the parties to understand the implications of White's assertions and Harmon's responsibilities in Case #2 before further litigation takes place in Case #3, reduce confusion among the parties regarding White's and Harmon's contradictory positions, preserve resources that would otherwise be spent on attempts to clarify the confusion emanating from concurrent litigation, and provide an opportunity for the Court in Case #3 to determine what measures to take

the statute of limitations issue because the unresolved disputes in Case #2 hinder the Court in Case #3 from finding out relevant and germane dates of PISI's financial transactions.

[63] It is appropriate to stay Case #3 rather than Case #2 because Case #2 has a longer history, is more developed, involves more parties (at least 22 third party garnishees), and there has been extensive, continuous litigation. Its litigation has already generated over 350 transactions filed as of this date. In addition, Case #2 is in the discovery stage and before a Commissioner who is extremely familiar with the issues and facts of the case. Contrastingly, Case #3 is more recent. It commenced on April 23, 2018 and has significantly fewer (42) transactions filed as of this date.

to protect both parties' rights and to preserve Delaware public policy goals during and after resolution of Case #2.[64]

A stay in Case #3 will accomplish the goals of protecting White's, PISI's, and Swan's rights in both cases, preserving Delaware public policy goals, and potentially reducing confusion. White, who is a not an attorney, cannot be sanctioned for violating the Delaware Lawyer's Rules of Professional Conduct. As such, there may be no effective process to proactively prevent White from access to or inappropriate use of any confidential information that he obtains in Case #2 against PISI in Case #3. Furthermore, the representation of White by an attorney (if he has retained one for the duration of Case #3) would not resolve the situation because White, who is the Plaintiff here, has created the situation.

White's and Harmon's positions and the ensuing obfuscations have rendered concurrent litigation in Case #2 and Case #3 to be conflicting, tethered to uncertainties (in Case #2), and unusually convoluted. These simultaneous cases potentially abrogate the parties' due process rights, potentially hinder rather than assist White in pursuing his fraudulent transfer claim, possibly generate duplicative processes, and will spawn additional litigation due to the need to establish

---

[64] Moreover, neither party will be unfairly prejudiced by a stay. The stay will not unfairly prejudice PISI, Swan, or the other Defendants because it will protect their rights. The stay will not unfairly prejudice White because, if these are true garnishees in Case #2, White could first collect on the debt, have a better understanding as to the flow of PISI's money, and PISI's assets will be preserved because the Court will order that PISI and Swan must preserve assets and not divest assets.

parameters on the parties' roles and responsibilities. A temporary stay of the Instant Case (Case #3) (rather than dismissal) will protect the litigants' rights.

## Conclusion

For the foregoing reasons, this Court temporarily stays the Instant Action pending resolution of issues in Case # N14J-01761. Additionally, this Court orders PISI, Swan, and all other Defendants in the Instant Case to preserve and not to divest themselves of any asset that has been owned by PISI or is connected or traceable to PISI during the pendency of this stay without specific order of the Court.

**IT IS SO ORDERED**.

_____
Diane Clarke Streett, Judge

27